# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION AT DAYTON

TERESA MORGAN,                           :

     Plaintiff,                           :

                                         Case No. 3:10cv00299

 vs.                                     :

                                         District Judge Timothy S. Black

MICHAEL J. ASTRUE,                       :      Magistrate Judge Sharon L. Ovington
Commissioner of the Social
Security Administration,                 :

     Defendant.                           :

## REPORT AND RECOMMENDATIONS[1]

## I.    <u>Introduction</u>

Plaintiff Teresa Morgan brings this case challenging the Social Security

Administration's denial of her applications for Supplemental Security Income (SSI) and

Disability Insurance Benefits (DIB).  This Court has jurisdiction to review the

administrative denial of Plaintiff's SSI and DIB applications.  *See* 42 U.S.C. §§ 405(g),

1383(c)(3).

The case is before the Court upon Plaintiff's Statement of Errors (Doc. #9), the

Commissioner's Memorandum in Opposition (Doc. #10), the administrative record (Doc.

#6), and the record as a whole.

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and
Recommendations.

Plaintiff asserted during the administrative proceedings that she is eligible to receive DIB and SSI because she is under a "disability" within the meaning of the Social Security Act.  In the present case, she seeks a reversal of the Social Security Administration's non-disability decision or, at a minimum, a remand of this case for further administrative proceedings, including a proper evaluation of medical source opinions.  The Commissioner contends that an Order affirming the Social Security Administration's non-disability decision is warranted.

## II.    Background

### A.    Procedural History

Plaintiff filed her DIB and SSI applications in September 2006 asserting that she had been under a "disability" since October 1, 2005.[2]  (Doc. #6, *Page ID##* 190-94, 195-97).  Plaintiff described her disabilities as consisting of epilepsy, severe memory loss, hepatitis C, bipolar II disorder, post traumatic stress disorder, arthritis in her spine, and right knee-cap dislocation incurred during a car accident.  (*See* Doc. #6, *Page ID#* 209).

Following initial administrative denials of her applications, Plaintiff received a hearing before Administrative Law Judge (ALJ) Thaddeus J. Armstead Sr.  ALJ Armstead later issued the written decision concluding that Plaintiff was not under a disability and, therefore, not eligible to receive DIB or SSI.  (Doc. #6, *Page ID#* 56-71).

---

[2]  Plaintiff filed prior applications for social security benefits, which an ALJ denied on August 20, 2004. (Doc. #6, *Page ID##* 131, 138-41, 187-89, 205).  In the present case, ALJ Armstead applied res judicata "as to all issues related to the claimant's alleged disability status through that date [August 20, 2004]."  (Doc. #6, *Page ID#* 56).  ALJ Armstead thus considered whether Plaintiff was under a benefits-qualifying disability beginning on August 21, 2004.

### B.    Plaintiff's Vocational Profile and Testimony

Plaintiff was 36 years old on the date the ALJ issued his decision. Social Security regulations place her age in the category of a "younger person." *See* 20 C.F.R. §§404.1563; 416.963[3]. She has an equivalent high school education. Her past relevant work involved several jobs: retail clerk, janitor, and motor vehicle assembler. (Doc. #6, *Page ID*## 210, 218-25).

Plaintiff testified at the administrative hearing that she could not work due to her depression. (Doc. #6, *Page ID#* 84, 86). She noted that her "mental status is a lot worse than anything." (Doc. #6, *Page ID#* 84). She explained that she gets "real nervous" around people, so avoids others. She testified, "I don't like being around people. I have panic attacks. I don't – like I like – well, I stay in my room a lot. I have a grandson, I don't spend a lot of time with him. I kind of stay away from people." (Doc. #6, *Page ID#* 98). Plaintiff also had crying spells constantly and does not go out much. *Id.* She also reported that she had problems with focus and concentration. She repeated herself, might forget things, and cannot remember what she has read by the end of a paragraph.

### C.    Medical Source Opinions[4]

Plaintiff relies on the opinions of her treating psychiatrist Mahmood Rahman,

---

[3] The remaining citations will identify the pertinent DIB Regulations with full knowledge of the corresponding SSI Regulations.

[4] Plaintiff does not challenge the ALJ's evaluation of the medical evidence as to her exertional impairments. Accordingly, the Court will focus its review of the medical evidence on Plaintiff's alleged mental impairments.

M.D., who treated her from December 2007 through at least July 2009.  (Doc. #6, *Page ID##* 737-51, 802-06, 1005-10).  Dr. Rahman diagnosed Plaintiff with bipolar disorder and posttraumatic stress disorder (PTSD).  He prescribed medication and sometimes adjusted and added medications.  (Doc. #6, *Page ID##* 751, 753, 805, 1010).

In March 2008 Dr. Rahman completed a two-page form titled "Mental Functional Capacity Assessment."  (Doc. #6, *Page ID##* 520-21).  Dr. Rahman checked boxes on the form indicating his opinions that Plaintiff was "extremely limited" in her ability to understand, remember and carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule; maintain regular attendance and be punctual within customary tolerances; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being distracted by them; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; and get along with coworkers or peers without distracting them or exhibiting behavioral extremes.  (Doc. #6, *Page ID#* 520).  Dr. Rahman checked other boxes indicating that Plaintiff was markedly impaired in her ability to understand, remember and carry out simple instructions; make simple work related decisions; and ask simple questions or request assistance.  *Id.*  Dr. Rahman concluded that Plaintiff was "unemployable."  (Doc. #6, *Page ID#* 521).

4

In September 2008 and February 2009, Dr. Rahman again documented his Mental Functional Capacity Assessments of Plaintiff.  (Doc. #6, *Page ID*## 517-19, 776).  The updated forms he completed had been changed; they no longer described the most severe category of limitations as "extremely limited."  Instead, the most severe category on the new forms was "markedly limited." *Id.*  Dr. Rahman checked boxes on these forms indicating his opinions that Plaintiff had moderate-to-marked limitations in a variety of work-related mental functions.  And he repeated his opinion that Plaintiff was "unemployable."  (Doc. #6, *Page ID*# 517, 776).

In July 2009 Dr. Rahman completed a "Mental Impairment Questionnaire."  (Doc. #6, *Page ID*## 1001-02).  Dr. Rahman reported that he had seen Plaintiff monthly since December 2007.  He noted that Plaintiff suffered from bipolar II disorder, posttraumatic stress disorder, and panic disorder.  He assessed her current Global Assessment of Functioning  (GAF) at 45 (Doc. #6, *Page ID*# 1001), corresponding to a person with "serious symptoms ... or serious impairment in occupational, social, or school functioning."[5]  Her highest GAF in the past year was 55 (Doc. #6, *Page ID*# 1001), corresponding to a person with "moderate symptoms ... or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-

---

[5]   Health care clinicians perform a Global Assessment of Functioning to evaluate a person's psychological, social, and occupational functioning on a hypothetical continuum of mental illness.  It is, in general, a snapshot of a person's "overall psychological functioning" at or near the time of the evaluation.  *See Hash v. Commissioner of Social Sec.*, 309 Fed.Appx. 981, 988 n.1 (6th Cir. 2009); *see also* Diagnostic and Statistical Manual of Mental Disorders, 4th ed., Text Revision (DSM-IV-TR) at pp. 32-34.

workers)." *See supra*, n.5 (DSM-IV-TR). Dr. Rahman noted that Plaintiff's symptoms included poor memory; disturbances of appetite, sleep, and mood; emotional lability; recurrent panic attacks; anhedonia or pervasive loss of interests; psychomotor agitation or retardation; paranoia or inappropriate suspiciousness; feelings of guilt/worthlessness; difficulty thinking or concentrating; decreased energy; manic syndrome; generalized persistent anxiety; and hostility and irritability.  (Doc. #6, *Page ID*# 1001).  Dr. Rahman opined that Plaintiff had moderate limitations in her activities of daily living; marked limitation in maintaining social functioning; marked limitation in concentration, persistence or pace; and marked episodes of deterioration or decompensation in work. (Doc. #6, *Page ID*# 1002).  Dr. Rahman concluded that Plaintiff would miss work more than three times a month.  *Id.*

In support of Dr. Rahman's opinion, Plaintiff relies on the opinion of consulting psychologist, Nicole Leisgang, Psy.D.  Dr. Leisgang examined Plaintiff at the request of the Ohio Bureau of Disability Determination (Ohio BDD) on November 18, 2006.  (Doc. #6, *Page ID*## 405-11).  Plaintiff described a long history of alcohol and cocaine dependence although she has been sober for more than one year.  Plaintiff reported that she spent most of her time at home, usually only going out for doctor appointments.  She preferred to be by herself and avoided people.  (Doc. #6, *Page ID*# 406).

Dr. Leisgang observed that Plaintiff was cooperative on examination and did not appear to exaggerate or minimize her difficulties.  While her conversation was neither pressured nor slowed, she did have slight word retrieval difficulties.  Her vocabulary

suggested that she was of average intelligence. (Doc. #6, *Page ID#* 407). According to Dr. Leisgang, Plaintiff appeared to be anxious; she showed apprehensive facial expression, variable eye contact, and significant psychomotor agitation. She frequently fidgeted with her hands. Plaintiff told Dr. Leisgang that she was continually anxious and often worried. She often cried too. *Id.*

Testing revealed that Plaintiff's remote recall was adequate but her short-term memory was limited. Her attention and concentration skills were weak, as evidenced by slow serial sevens. Her reasoning abilities were likewise weak. Dr. Leisgang noted that while Plaintiff's test results placed her in the mild mental retardation range, these scores were "lower than would be expected given her clinical presentation" and she concluded that "emotional factors very likely interfered with her performance on this measure, as she appears to be of average intelligence." (Doc. #6, *Page ID#* 408).

Dr. Leisgang diagnosed Plaintiff with bipolar disorder, NOS[6]; posttraumatic stress disorder; alcohol dependence in remission; cocaine dependence in remission; and personality disorder NOS. Dr. Leisgang assigned Plaintiff a GAF of 51 (Doc. #6, *Page ID#* 410), referring to a person with "moderate symptoms ... or moderate difficulty in social, occupational, or school functioning...." DSM-IV-TR at p. 32. Dr. Leisgang opined that Plaintiff had a moderate-to-serious impairment in relating to others; a moderate impairment in her ability to understand, remember, and follow simple

---

[6] "NOS" or "not otherwise specified" in the DSM-IV-TR.

7

instructions; a moderate impairment in her ability to maintain attention, concentration, persistence or pace; and moderate-to-serious impairment in her ability to withstand the stress of daily work.  (Doc. #6, *Page ID#* 411).  Dr. Leisgang concluded that day-to-day work stress might result in increased anxiety along with decreased attention and concentration.  *Id.*  Daily work stress might also  exacerbate her PTSD symptomatology, interfere with her ability to relate adequately to others, and lead to increased depressive symptomatology (crying, withdrawal, and slowed work performance).  Dr. Leisgang lastly noted that daily work stress could result in return to substance abuse.  *Id.*

The Commissioner relies on the opinions of Todd Finnerty, Psy.D., who reviewed Plaintiff's records at the Ohio BDD's request.  In December 2006 Dr. Finnerty completed a form assessing Plaintiff's Mental Residual Functional Capacity.  In doing so, Dr. Finnerty did not check any boxes indicating that Plaintiff had "marked restrictions" in any area.  (Doc. #6, *Page ID#* 413-14).  He instead checked boxes indicating that Plaintiff had moderate restrictions in many areas, for example: her ability to carry out detailed instructions; her ability to maintain concentration and attention for extended periods; her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. her ability to maintain social functioning.  (Doc. #6, *Page ID#* 413-14).

Dr. Finnerty concluded that Plaintiff was able to perform "at least srt" (simple,

repetitive tasks); tolerate superficial interactions with others; and relatively static duties where changes could be explained.  But she could not tolerate fast-paced production quotas, according to Dr. Finnerty.  (Doc. #6, *Page ID#* 416).

Dr. Finnerty also completed a Psychiatric Review Technique form recognizing, in part, that Plaintiff suffers from a bi-polar disorder "d/o nos" and an anxiety disorder that involves "[r]ecurrent and intrusive recollections of a traumatic experience, which are a source of marked distress."  (Doc. #6 *Page ID#* 420, 422).  When assessing Plaintiff's funational abilities in the so-called "B" Criteria of the Listings, Dr. Finnerty did not check any boxes that would have recognized Plaintiff having a "marked" degree of limitations. He instead checked boxes opining that Plaintiff was moderately limited in three areas: restriction of daily living; difficulties in maintains social functionaing; and difficulties in maintaining concentration, persistence, or pace.  (*Id.* at 427).  And Dr. Finnerty lastly indicated that Plaintiff had not experienced any episodes of decompensation, each of an extended duration.  *Id.*

Dr. Finnerty's assessment was affirmed in March 2007 by state agency reviewing psychologist, Alice Chambly, Psy. D.  (Doc. #6, *Page ID#* 411-13).

III. __Administrative Review__

A. __"Disability" Defined__

To be eligible for SSI or DIB a claimant must be under a "disability" within the definition of the Social Security Act.  *See* 42 U.S.C. §§423(a), (d), 1382c(a).  The definition of the term "disability" is essentially the same for both DIB and SSI.  *See*

9

*Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).  A "disability" consists only of physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies.  *See Bowen*, 476 U.S. at 469-70 (1986).

A DIB/SSI applicant bears the ultimate burden of establishing that he or she is under a disability. *See Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997); *see Wyatt v. Secretary of Health and Human Services*, 974 F.2d 680, 683 (6th Cir. 1992); *see also Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978).

### B. <u>Social Security Regulations</u>

Social Security Regulations require ALJs to resolve a disability claim through a five-Step sequential evaluation of the evidence.  20 C.F.R. §404.1520(a)(4).  Although a dispositive finding at any Step ends the ALJ's review, *see also Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5.      Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §404.1520(a)(4); *see also Colvin*, 475 F.3d at 730; *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

## C.      ALJ Armstead's Decision

ALJ Armstead resolved Plaintiff's disability claim by using the five-Step sequential evaluation procedure required by Social Security Regulations.  (Doc. #6, *Page ID#* 56-71).  His more pertinent findings began at Step 2 where he found that Plaintiff has the severe impairments of degenerative disc disease of the lumbar and cervical spines; bilateral torn menisci, status-post surgery; diagnosis of hepatitis C; history of seizures; bipolar disorder NOS; Post-traumatic stress disorder; and alcohol and cocaine dependence, both in reported remission.  (Doc. #6, *Page ID#* 58).

At Step 3 the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the criteria in the Commissioner Listing of Impairments.  (Doc. #6, *Page ID#* 60).

The ALJ concluded at Step 4 that Plaintiff retained the residual functional capacity to perform light exertional work[7] except she should not climb ladders, ropes, or scaffolds; she should not be exposed to hazards, such as or similar to unprotected heights,

---

[7] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations.  20 C.F.R. §416.945(a); *see Howard v. Commissioner of Social Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).  "Light" work requires the ability to lift "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds...." 20 C.F.R. §416.967(b).

11

unprotected bodies of water, or dangerous moving machinery; she should not be required to handle food; she should do no more than occasional stooping, kneeling, crawling, crouching, balancing, or climbing ramps or stairs; and she should not be required to do more than occasional overhead reaching with her left upper extremity. (Doc. #6, *Page ID#* 64).

The ALJ determined that Plaintiff's mental impairments restricted her (1) to jobs requiring no more than simple, repetitive tasks that are static in nature and in which any changes are easily explainable; (2) to jobs involving no more than superficial contact with co-workers, supervisors, and the public; and (3) jobs not requiring a fast pace or strict production quotas. *Id.*

Ultimately at Step 4 the ALJ concluded that Plaintiff was unable to perform her past relevant work as a janitor or a motor vehicle assembler. (Doc. #6, *Page ID#* 69).

At Step 5 the ALJ determined that Plaintiff could perform jobs that exist in significant numbers in the national economy. (Doc. #6, *Page ID#* 70).

The ALJ's findings throughout his sequential evaluation led to his final conclusion that Plaintiff was not under a disability. Consequently, the ALJ determined that Plaintiff was not eligible to receive DIB or SSI. (Doc. #6, *Page ID#* 71).

## IV.   **Judicial Review**

Judicial review determines, in part, "whether the ALJ applied the correct legal standards..." *Blakley v. Comm'r of Social Security*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F3d 742, 745-46 (6th Cir. 2007). Social Security

Regulations and caselaw establish those standards; after all: "[i]t is an elemental principle of administrative law that agencies are bound to follow their own regulations....  The Supreme Court has long recognized that a federal agency is obliged to abide by the regulations it promulgates...."  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004).

Judicial review further considers "whether the findings of the ALJ are supported by substantial evidence."  *Blakley*, 581 F.3d at 406; *see Bowen*, 478 F3d at 745-46.  Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance..."  *Rogers v. Comm'r of Social Security*, 486 F.3d 234, 241 (6th Cir. 2007).  Substantial evidence is present "if a 'reasonable mind might accept the relevant evidence as adequate to support..." the ALJ's factual findings.  *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Social Security*, 375 F.3d 387, 390 (6th Cir. 2004).  The existence of substantial evidence does not depend on whether the Court agrees or disagrees with the ALJ's findings.  *Rogers*, 486 F.3d at 241; *see Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).  Instead the ALJ's decision is affirmed "if his findings and inferences are reasonably drawn from the record or supported by substantial evidence even if that evidence could support a contrary decision."  *Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 395 (6th Cir. 2010).

"Yet, even if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the

13

claimant of a substantial right.'"  *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 651 (6th

Cir. 2009); *see Wilson*, 378 F.3d at 546-47; *see also Kalmbach v. Comm'r of Soc. Sec.*,

2011 WL 63602 at *6 (6th Cir. 2011)("we must reverse and remand if the ALJ applied the

incorrect legal standards, even if the factual determinations are otherwise supported by

substantial evidence and the outcome on remand is unlikely to be different.")

**V.**    **Discussion**

    **A.**    **The Parties' Main Contentions**

Plaintiff describes the single issue presented in this case as follows:

> Whether the administrative law judge's finding concerning residual
> functional capacity is supported by substantial evidence where the
> administrative law judge relied on the opinion of a non-examining State
> agency psychologist to the exclusion of the opinions of the treating
> psychiatrist and consultative examiner without rationale as to why this
> opinion deserved greater weight?

(Doc. #9, *Page ID* # 1015).

Plaintiff argues that her ability to perform work is far more limited than the ALJ

found, as documented by her treating psychiatrist Dr. Rahman and consulting

psychologist Dr. Leisgang.   Plaintiff contends that the ALJ erred by not referring to Dr.

Rahman's 2008 opinions; by substituting his own lay medical opinion in place of Dr.

Rahman's; by discounting Dr. Rahman's opinions because he did not refer to objective

findings that supported his opinions; and by favoring the state agency psychologist's

opinions over those of Dr. Rahman; and by not discussing the weight he placed on Dr.

Leisgang's opinions.

The Commissioner argues that substantial evidence supports the ALJ's non-disability decision and that the ALJ properly relied on the state agency psychologist and properly reviewed and weighed the opinions of Drs. Rahman and Leisgang.  Substantial evidence thus supports the ALJ's decision, according to the Commissioner.

**B.      The Legal Criteria Applicable to Medical Source Opinions**

Social Security Regulations, 20 C.F.R. §404.1527, describe the legal criteria an ALJ must use to weigh medical source opinions, beginning with the treating physician rule.  When it applies, the treating physician rule requires the ALJ to place controlling weight on a treating physician's or a treating psychologist's opinions rather than favoring the opinions of a nonexamining medical source, a one-time examining physician or psychologist, or a medical expert who testified during the ALJ's hearing.  *Blakley,* 581 F.3d at 406; *see Wilson*, 378 F.3d at 544.  A treating physician or psychologist's opinions are given controlling weight only if the opinions are both well supported by medically acceptable data and not inconsistent with other substantial evidence of record.  *Blakley,* 581 F.3d at 406; *see Wilson*, 378 F.3d at 544.  "If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of the examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician."  *Blakley,* 581 F.3d at 406 (citing

*Wilson*, 378 F.3d at 544).

As to other medical sources, the same regulatory factors apply.  *See* 20 C.F.R. 20

C.F.R. §416.972(d), (f); *see also* Ruling 96-6p at *2-*3.  More weight is generally given

to the opinions of an examining medical source than is given to the opinions of non-

examining medical sources.  *See* 20 C.F.R. §404.1527(d)(1).  Yet a non-examining state

agency medical source's opinions can carry some probative value and can, under certain

circumstances, be given significant weight.  The Commissioner views such medical

sources "as highly qualified physicians and psychologists who are experts in the

evaluation of the medical issues in disability claims under the [Social Security] Act."

Social Security Ruling 96-6p, 1996 WL 374180 at *2.

## C.    <u>Analysis</u>

The ALJ provided a detailed and well-supported description of the medical source

opinions and records.  *See* Doc. #6, *Page ID##* 61-64, 66-67.  Contrary to Plaintiff's

contentions, the ALJ provided sufficient information to show that he weighed the medical

source opinions as the Regulations required.

The ALJ accurately described the legal criteria applicable to determining whether

the treating physician rule applies.  (Doc. #6, *Page ID#* 68-69).  The ALJ likewise

recognized that if the treating physician rule does not apply, the Regulations require ALJs

to continue weighing the treating physician's opinions under various factors.  The ALJ

then correctly listed those factors (supportability, consistency, specialization, etc.).  *Id*.;

16

*see* 20 C.F.R. §404.1527(d)(2)-(6); *see also Wilson*, 378 F.3d at 544.  In this manner, the ALJ did not err as a matter of law.

The ALJ declined to place controlling or substantial weight on Dr. Rahman's disability opinions because they were not "supported by objective or clinical findings" and were "not consistent with his own treatment regimen."  20 C.F.R. § 416.927(d)(2); *see Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 877 (6th Cir. 2007).  A review of Dr. Rahman's opinions confirms the ALJ's view.  Dr. Rahman's opinions that Plaintiff is markedly limited in social functioning and in maintaining concentration, persistence, and pace and that she experiences marked episodes of decompensation appears in boxes he checked without any supporting explanation or reference to medical evidence.  (Doc. #6, *Page ID*## 517, 520-21, 776).  Plaintiff's reliance on certain clinical signs and symptoms identified by Dr. Rahman, *see* Doc. #9, *Page ID* #1029, overlooks that Dr. Rahman merely checked certain lines on a questionnaire to identify these signs and symptoms without providing any supporting explanation for the limitations he set or for his disability opinion.  *See* Doc. #6, *Page ID* ## 1001-1002.  Dr. Rahman's assessments were therefore conclusory.  *Id.*

The ALJ, moreover, did not adopt Dr. Rahman's opinions that Plaintiff could not work due to her alleged mental impairment "based on the lack of evidentiary support." (Doc. #6, *Page ID*# 69).  The ALJ substantiated his findings by noting, for example that, Plaintiff did not receive medication from Samaritan Behavioral Health until August 2006. (Doc. #6, *Page ID*## 61-64, 440-59).  The ALJ further considered the treatment records

17

from Daymont Healthcare, which showed therapy for about eleven months.  The DayMont records note that Plaintiff was alert, oriented, pleasant, and cooperative.  And she took care of her elderly mother and her developmentally disabled brother, and she received almost no medication management in 2007.  (Doc. #6, *Page ID##* 62, 66).

The ALJ also discounted Dr. Rahman's opinions because "Dr. Rahman has not reported any clinical findings consistent with significant or worsening emotional condition despite office visit notes that require only a check-mark to indicate observations of emotional distress."  (Doc. #6, *Page ID#* 69).  Dr. Rahman's clinical notes contain few, if any, observations revealing that Plaintiff has marked symptoms.  A treating medical source's opinions do not bind the Commissioner when unsupported by detailed clinical and diagnostic test evidence.  *Warner v. Commissioner of Social Security,* 375 F.3d 387, 390 (6th Cir. 2004)*; see Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779-780 (6th Cir. 1987); *see also King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1983); *Halsey v. Richardson*, 441 F.2d 1230, 1235-36 (6th Cir. 1971).

Plaintiff argues that the ALJ "makes no reference to [Dr. Rahman's] 2008 opinions."  (Doc. # 9 at 14).  While the ALJ did not separately describe Dr. Rahman's 2008 opinions, he correctly recognized that Dr. Rahman had been Plaintiff's "treating source since December 4, 2007..." (Doc. #6, *Page ID* #62).  The ALJ then cited to an Exhibit in the administrative record that contained Plaintiff's 2008 treatment records from Green Pak Psychiatric Service, which Dr. Rahman signed.  In light of this, the ALJ considered Dr. Rahman's 2008 treatment records concerning Plaintiff.  *Id.* (citing, in part,

18

Exhibit 35-F, found at *Page ID* ## 737-751).  Additionally, "although required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered."  *Simons v. Barnhart*, 114 Fed. Appx. 727, 733 (6th Cir. 2004)(citing *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)); *see Thacker v. Commissioner of Social Sec*., 99 Fed.Appx. 661, 665 (6th Cir. 2004)("An ALJ need not discuss every piece of evidence in the record for his decision to stand.").  Dr. Rahman, moreover, completed the March and September 2008 forms by only checking certain boxes; he did not provide any supporting explanation and did not refer to any signs or symptoms he had observed that led him to conclude that Plaintiff had "marked" limitations and was "unemployable."  *See* Doc. #6, *Page ID*# 517-21).  For all these reasons, the ALJ did not err by failing to specifically discuss or cite to Dr. Rahman's 2008 opinions.

Plaintiff also argues that the ALJ failed to discuss the weight he gave to the opinion of the one-time examiner, Dr. Leisgang.[8]  (Doc. # 9 at 18).  As the ALJ noted, Dr. Leisgang consultatively examined Plaintiff and found that she had either moderate or moderate-to-serious impairments in four functional areas.  (Doc. #6, *Page ID*## 61, 63, 411).  Her opinions therefore were inconsistent with the more severe – marked – limitations set by Dr. Rahman.  The ALJ's assessment of Plaintiff's residual functional capacity essentially accepted Dr. Leisgang's opinions that Plaintiff had moderate

---

[8]  The ALJ inaccurately referred to Dr. Deardorff's report where he should have referred to Dr. Leisang's report, as the Commissioner acknowledges.  (Doc. #10, *Page ID* # 1045 n. 8).

limitations in the same functional areas, Dr. Leisgang's opinions do not otherwise undermine the ALJ's assessment of Plaintiff's residual functional capacity.  Plaintiff has therefore not established any error in the ALJ's review of Dr. Leisang's opinions.

The ALJ likewise did not err regarding Dr. Finnerty's opinions.  He applied the correct legal criteria and substantial evidence, including Dr. Leisgang's opinions and the ALJ's decision to discount the contrary opinions of Dr. Rahman, supports the ALJ's review.  *See* Doc. #6, *Page ID* # 61-69.

Plaintiff's next argues that the ALJ substituted his own lay opinions in place of Dr. Rahman's opinions.  This argument is meritless.  As discussed above, the ALJ discounted Dr. Rahman's opinions by applying the correct legal criteria and substantial evidence supported the ALJ's decision to give little weight to Dr. Rahman's opinions.  In doing so, the ALJ did not substitute his own lay medical opinions in place of Dr. Rahman's.  *See id*.

Plaintiff finds further fault in the ALJ's reference to a lack of objective evidence as a basis for rejecting Dr. Rahman.  However, any error on this point, *see Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 10989), either did not infect the ALJ's decision with reversible error or constituted harmless error.  This is so because the ALJ otherwise applied the correct legal standards throughout his five-step sequential evaluation and because substantial evidence supported the ALJ's findings and conclusions.

Accordingly, Plaintiff's Statement of Errors lacks merit.


**IT IS THEREFORE RECOMMENDED THAT:**

20

1.      The Commissioner's final non-disability determination be AFFIRMED; and

2.      The case be terminated on the docket of this Court.

July 20, 2011                                                s/Sharon L. Ovington     
                                                                        Sharon L. Ovington
                                                               United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).